# EXHIBIT G



INTERNATIONAL COURT OF ARBITRATION® | INTERNATIONAL CENTRE FOR ADR | LEADING DISPUTE RESOLUTION WORLDWIDE

# AWARD

**INTERNATIONAL CHAMBER OF COMMERCE (ICC)**
**INTERNATIONAL COURT OF ARBITRATION**

33-43 avenue du Président Wilson, 75116 Paris, France
**T** +33 (0)1 49 53 29 05  **F** +33 (0)1 49 53 29 33
**E** arb@iccwbo.org   www.iccarbitration.org

## ICC INTERNATIONAL COURT OF ARBITRATION

### CASE No. 16982/JRF/CA/ASM (C- 17336/JRF)

**1. PDV SWEENY, INC.**

(U.S.A.)

**2. PDV TEXAS, INC.**

(U.S.A.)

**3. PETROLEOS DE VENEZUELA, S.A.**

(Venezuela)

**4. PDVSA PETROLEO, S.A.**

(Venezuela)

**vs/**

**1. CONOCOPHILLIPS COMPANY**

formerly doing business as PHILLIPS PETROLEUM COMPANY

(U.S.A.)

**2. SWEENY COKER INVESTOR SUB, INC.**

(U.S.A.)

This document is an original of the Final Award rendered in conformity with the Rules of Arbitration of the ICC International Court of Arbitration.

16982/JRF/CA/ASM (C-17336/JRF)

## INTERNATIONAL CHAMBER OF COMMERCE
## INTERNATIONAL COURT OF ARBITRATION

BETWEEN:

### PDV SWEENY, INC. (U.S.A.), PDV TEXAS, INC. (U.S.A.)
### PETRÓLEOS de VENEZUELA, S.A. (Venezuela) and
### PDVSA PETRÓLEO, S.A. (Venezuela)

Claimants

-and-

### CONOCOPHILLIPS COMPANY formerly doing business as PHILLIPS
### PETROLEUM COMPANY (U.S.A.) and SWEENY COKER
### INVESTOR SUB, INC. (U.S.A.)

Respondents/Counterclaimants

# FINAL AWARD

Before an Arbitral Tribunal:

### Co-Arbitrators:

| | |
|---|---|
| Bruno W. Boesch, Esq.<br>Froriep LLP<br>17 Godliman Street<br>London EC4V 5BD<br>United Kingdom | Abraham D. Sofaer, Esq.<br>The Hoover Institution<br>Stanford University<br>434 Galvez Mall<br>Stanford, CA 94305-6010<br>U.S.A. |

### Chairman:

David R. Haigh, Q.C.
Burnet, Duckworth & Palmer LLP
#2400, 525 – 8th Avenue S.W.
Calgary, Alberta T2P 1G1
Canada

Administrative Secretary to the Tribunal: Valérie E. Quintal

| Counsel for the Claimants | Counsel for the Respondents | |
|---|---|---|
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Freshfields Bruckhaus Deringer LLP | King & Spalding |
| Joseph D. Pizzurro<br>Alexandra G. Maier<br>Robert B. Garcia<br>101 Park Avenue<br>New York, New York 10178-0061<br>U.S.A. | Lucy Reed<br>10 Collyer Quay 42-01<br>Ocean Financial Centre,<br>Singapore 049315<br>Nigel Blackaby<br>Alexander Yanos<br>Viren Mascarenhas<br>Lexi Menish<br>601 Lexington Avenue, 31st Floor<br>New York, New York 10022<br>U.S.A. | R. Doak Bishop<br>Craig S. Miles<br>Wade M. Coriell<br>Jamie M. Miller<br>Elizabeth M. Silbert<br>1100 Louisiana, Suite 4000<br>Houston, Texas 77002-5213<br>U.S.A. |

## A.    INTRODUCTION

1.    On April 22, 2014, the ICC Secretariat notified the Parties of the tribunal's Partial Award, dated April 14, 2014, dealing with the merits of this arbitration.[1] This Final Award considers whether to award interest and/or costs in relation to the determinations made in the Partial Award, and, if so, in what amounts.

2.    In its Partial Award, the tribunal declared, among other things, that the Respondents' exercise of the Call Option was valid, that the Respondents' Aggregate Lookback Adjustment claims for the second semester of 2008 and the first and second semesters of 2009 were validly and timely brought and that the Respondents are entitled to payment by PPSA (under the COSA) and by PDVSA (under the SCOSA and the COSA Guarantee) of Seller Damages in the amount of US$5,064,038. The tribunal reserved its decision on whether to award costs in favor of the Respondents in relation to their demurrage claims.

## B.    SUBMISSION TO ARBITRATION / APPLICABLE LAW

3.    As set out in the Partial Award, the Claimants and the Respondents have advanced different sets of claims which relate, in part, to different agreements. The arbitration clauses and applicable law for the claims are set forth below.

4.    The Transfer Agreement among ConocoPhillips, Sweeny Sub, PDV Sweeny and PDV Texas, dated June 18, 1999, provides as follows:

> Section 6.11 Arbitration
>
> (a)    Any dispute, claim or controversy arising out of or in connection with any of the Project Transaction Documents or their breach, termination or validity ("Dispute") shall be settled exclusively and finally by arbitration conducted by three (3) arbitrators in accordance with the Rules of Arbitration of the ICC (the "ICC Rules") in effect at the time of such proceeding.
>
> (b)    Each of Phillips and PDV Sweeny shall nominate one (1) arbitrator in accordance with the ICC Rules (such arbitrators, the

---

[1] All defined terms in this Final Award have the same meaning as the defined terms in the Partial Award.

"Nominees"). The Nominees shall then agree within thirty (30) days from the date on which the second (2nd) Nominee was nominated on a third (3rd) person to serve as chairperson of the tribunal. If the Nominees are unable to select a third (3rd) arbitrator within such period, the International Court of Arbitration of the ICC shall select such third (3rd) arbitrator within thirty (30) days of the written request by either Nominee.

(c)     If (i) two (2) or more Disputes arising out of or in connection with any of the Project Transaction Documents are simultaneously pending, (ii) the subject matters of such Disputes involve common questions of law or fact and (iii) the independent resolution of each such Dispute could result in conflicting awards or obligations, such Disputes may be consolidated in a single proceeding. If more than one arbitration proceeding involving any such Disputes are pending, such proceedings shall, at the request of either Phillips or PDV Sweeny, be consolidated and settled in a single arbitration proceeding; <u>provided</u> that the determination of whether such Disputes shall be consolidated shall be determined by the first (1st) arbitration tribunal established to settle any such Dispute. If such Disputes are consolidated and more than one (1) arbitration tribunal has been established to settle any of such Disputes, Phillips and PDV Sweeny shall, within twenty (20) days of such consolidation, select one (1) of the arbitration tribunals so established to settle the single consolidated arbitration proceeding. If Phillips and PDV Sweeny are unable to select such arbitration tribunal within said 20-day period, the International Court of Arbitration of the ICC shall select such arbitration tribunal within thirty (30) days of the written request by either Phillips or PDV Sweeny.

(d)     Unless otherwise agreed by Phillips and PDV Sweeny, any arbitration proceeding pursuant to this Section 6.11 shall be conducted and any award shall be rendered in New York, New York. Any arbitration proceeding pursuant to this Section 6.11 shall be conducted and any award shall be rendered in the English language.

(e)     Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, any arbitration proceeding hereunder, and any arbitral award shall be governed by (i) the Federal Arbitration Act, Title 9, U.S. Code, to the exclusion of any state or municipal law of arbitration and (ii) the United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards of 10 June 1958 and the Inter American Convention on International Commercial Arbitration of 30 January 1975, in each case to the extent such convention is enforceable in the Republic of Venezuela.

Section 6.12 <u>Final Award</u>

(a)     Any award by an arbitration tribunal pursuant to Section 6.11 shall be reduced to writing with the reasons therefor set forth therein and shall be final and binding upon the parties to the relevant Project Transaction Document(s).

(b)     Judgment for execution and enforcement of any award by any such arbitration tribunal may be entered by any court of competent jurisdiction without review of the merits of such award.

(c)     The parties hereto agree that irreparable damage could occur in event that this Agreement were not performed in accordance with its specific terms or were otherwise breached. Accordingly, each of PDV Sweeny and Phillips shall have the right to seek, in aid of arbitration, provisional measures (including a temporary restraining order or preliminary injunction) to prevent a breach of this Agreement from any court of competent jurisdiction to prevent harm. In addition, an arbitration tribunal convened under Section 6.11 shall have the power to grant an injunction or injunctions to prevent breaches of this Agreement, and each of PDV Sweeny and Phillips shall be entitled to enforce specifically the terms and provisions of an award of such arbitration tribunal providing for such an injunction or injunctions in any court of competent jurisdiction, being in addition to any other remedy to which they are entitled at law or in equity. Except as set forth in Section 4.1 and 4.2 of the Transfer Agreement, all rights, powers and remedies provided under the Project Transaction Documents or otherwise available in respect hereof or at law or in equity shall be cumulative and not alternative, and the exercise of any thereof by any party thereto shall not preclude the simultaneous or later exercise of any other such right, power or remedy by such party.

**5.**     Section 12.2 of the Amended and Restated Crude Oil Supply Agreement between ConocoPhillips and PPSA, dated June 18, 1999 (the "COSA") provides:

(a)     Any dispute, claim or controversy arising out of or in connection with any of the Transaction Documents or their breach, termination or validity (a "<u>Dispute</u>") shall be settled exclusively and finally by arbitration conducted by three (3) arbitrators in accordance with the Rules of Arbitration of the ICC (the "<u>ICC Rules</u>") in effect at the time of such proceeding.

(b)     Each of Buyer and Seller shall nominate one (1) arbitrator of such tribunal in accordance with the ICC Rules (such arbitrators, the "<u>Nominees</u>"). The Nominees shall then agree within thirty (30) days from the date on which the second (2nd) Nominee was nominated on a third (3rd) arbitrator to serve as chairperson of the tribunal. If the Nominees are unable to select a third (3rd) arbitrator within such period, the International Court of Arbitration of the ICC shall select such third (3rd) arbitrator within thirty (30) days of the written request by either Nominee.

(c)     If (i) two (2) or more Disputes arising out of or in connection with any of the Transaction Documents are simultaneously pending, (ii) the subject matters of such Disputes involve common questions of law or fact and (iii) the independent resolution of each such Dispute could result in conflicting awards or obligations, such Disputes may be consolidated in a single proceeding. If more than one (1) arbitration proceeding involving any such Disputes are pending, such proceedings shall, at the request of either Buyer or Seller, be consolidated and settled in a single arbitration proceeding; *provided* that the determination of whether such Disputes shall be consolidated shall be determined by the first (1st) arbitration tribunal established to

-5-

settle any such Dispute. If such Disputes are consolidated and more than one (1) arbitration tribunal has been established to settle any of such Disputes, Buyer and Seller shall, within twenty (20) days of such consolidation, select one (1) of the arbitration tribunals so established to settle the single consolidated arbitration proceeding. If Buyer and Seller are unable to select such arbitration tribunal, the International Court of Arbitration of the ICC shall select such arbitration tribunal within thirty (30) days of the written request by either Buyer or Seller.

(d)     Unless otherwise agreed by Buyer and Seller, any arbitration proceeding pursuant to this Section 12.2 shall be conducted and any award shall be rendered in New York, New York. Any arbitration proceeding pursuant to this Section 12.2 shall be conducted and any award shall be rendered in the English language.

(e)     Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, any arbitration proceeding hereunder and any arbitral award pursuant thereto, shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 and the Inter-American Convention on International Arbitration of January 30, 1975, in each case to the extent such convention is enforceable in the Republic of Venezuela.

**6.**     Section 2.6 of the Amended and Restated Supplemental Crude Oil Supply Agreement between ConocoPhillips and PDVSA, dated June 18, 1999 (the "SCOSA") incorporates Section 12.2 of the COSA:

"Section 12.2 (Arbitration), except that such Section 12.2 shall also include the following provision at the end thereof:

(f) Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, and any arbitration proceeding hereunder, shall be governed exclusively by the Federal Arbitration Act, Title 9, U.S. Code to the exclusion of any state or municipal law of arbitration."

**7.**     Section 13 of the Amended and Restated PDVSA Crude Oil Supply Agreement Guarantee, dated June 18, 1999 (the "Guarantee") provides:

(a)     Except as otherwise provided in the Transaction Documents, any dispute, claim or controversy arising out of or in connection with any of the Transaction Documents or their breach, termination or validity (a "Dispute") shall be settled exclusively and finally by arbitration conducted by three (3) arbitrators in accordance with the Rules of Arbitration of the ICC (the "ICC Rules") in effect at the time of such proceeding.

(b)     Each of Beneficiary and Guarantor shall nominate one (1) arbitrator in accordance with the ICC Rules (such arbitrators, the "Nominees"). The Nominees shall then agree within thirty (30) days from the date on which the second (2nd) Nominee was nominated on a third (3rd) arbitrator to serve as chairperson of the tribunal. If the Nominees are unable to select a third (3rd) arbitrator within such

period, the International Court of Arbitration of the ICC shall select such third (3rd) arbitrator within thirty (30) days of the written request by either Nominee.

(c)      If two (2) or more Disputes arising out of or in connection with any of the Transaction Documents are simultaneously pending, (ii) the subject matters of such Disputes involve common questions of law or fact and (iii) the independent resolution of each such Dispute could result in conflicting awards or obligations, such Disputes may be consolidated in a single proceeding. If more than one (1) arbitration proceeding involving any such Disputes are pending, such proceedings shall, at the request of the Beneficiary or the Guarantor, be consolidated and settled in a single arbitration proceeding; *provided* that the determination of whether such Disputes shall be consolidated shall be determined by the first (1st) arbitration tribunal established to settle any such Dispute. If such Disputes are consolidated and more than one (1) arbitration tribunal has been established to settle any of such Disputes, Beneficiary and the Guarantor shall, within twenty (20) days of such consolidation, select one (1) of the arbitration tribunals so established to settle the single consolidated arbitration proceeding. If the Beneficiary and the Guarantor are unable to select such arbitration tribunal within said twenty (20) day period, the International Court of Arbitration of the ICC shall select such arbitration tribunal within thirty (30) days of the written request by either the Beneficiary or the Guarantor.

(d)      Unless otherwise agreed by the Guarantor and the Beneficiary, any arbitration proceeding pursuant to this Section 13 shall be conducted and any award shall be rendered in New York, New York. Any arbitration proceeding pursuant to this Section 13 shall be conducted and any award shall be rendered in the English language.

(e)      Notwithstanding anything to the contrary herein, the arbitration provisions set forth herein, any arbitration proceeding hereunder and any arbitral award pursuant thereto, shall be governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 and the Inter-American Convention on International Arbitration of January 30, 1975, in each case to the extent such convention is enforceable in the Republic of Venezuela.

8.    The Transfer Agreement and the SCOSA are governed by the laws of the State of New York and the COSA and the Guarantee are governed by the laws of Venezuela.

9.    The place of arbitration, pursuant to the agreement of the parties, is New York City, New York, U.S.A. The language of the arbitration is English.

## C.    PROCEDURAL HISTORY

10.    The tribunal refers to the procedural background as set out in the Partial Award and such procedural history is incorporated by reference into the

present Final Award. The tribunal also notes that it declared the proceedings closed on April 4, 2013, pursuant to Article 22(1) of the ICC Rules.

11.     Following the issuance of the Partial Award, on April 24, 2014, the tribunal issued Procedural Order No. 6 setting out the timelines for the Parties' submissions on interest and costs, as follows:

(a)     On or before May 14, 2014, the Parties were to deliver their written submissions on the potential award of costs pursuant to Article 31 of the *International Court of Arbitration Rules of Arbitration* in force as from 1 January 1998 together with any submissions on interest to be awarded. Such submissions were to be supported by reasonable summaries of the quantum being claimed including attorney's fees, expert fees and other disbursements; and

(b)     Within ten (10) business days of such submissions, the Parties could thereafter submit a brief reply to their opponents' claim for costs and interest.

12.     On May 14, 2014, the Parties submitted their Submissions on Interest and Costs. The Respondents included exhibits, appendixes and authorities in support of their submissions.

13.     On May 29, 2014, the Parties submitted their Replies to Submissions on Interest and Costs. The Claimants included appendixes in support of their reply submissions and the Respondents included an exhibit in support of their reply submissions.

14.     With respect to the ICC Court's directions regarding the time limit for rendering the Final Award, the tribunal notes the following additional extensions:[2]

(a)     9th extension until May 30, 2014 granted on April 20, 2014;

---

[2] Previous extensions granted by the ICC Court are found at ¶ 106 of the Partial Award.

**(b)**   10th extension until July 31, 2014 granted on May 22, 2014; and

**(c)**   11th extension until September 30, 2014 granted on July 17, 2014.

## D.   SUBMISSIONS OF THE CLAIMANTS

*Interest*

**15.**   The Claimants submit the pre-award interest rate on the Seller Damages awarded to the Respondents by the tribunal in its Partial Award should be 4.875%.

**16.**   The Claimants say that, under Section 2.8(d) of the COSA the Seller Damages for April 2009[3] became due on May 29, 2009, the Seller Damages for June 2009[4] became due on July 30, 2009 and the Seller Damages for July 2009[5] became due on August 30, 2009. The Claimants' methodology for calculating interest is:

**(a)**   Multiply the amounts of Seller Damages for each month in question by 0.04875 which results in the amount of the annual interest.

**(b)**   Divide the annual interest by 360 (the days in the year as per the definition of Default Rate in the Operating Agreement) which results in the daily interest.

**(c)**   Multiply the daily interest by the number of days from when the respective Seller Damages became due up to April 14, 2014, the date the Partial Award was issued.

**17.**   Following this methodology, the Claimants calculated the following interest amounts on Seller Damages from when they commenced until April 14, 2014:

---

[3] Pursuant to a Buyer Monthly Report dated May 19, 2009.

[4] Pursuant to a Buyer Monthly Report dated July 20, 2009.

[5] Pursuant to a Buyer Monthly Report dated August 20, 2009.

| BUYER MONTHLY REPORT | INTEREST |
|---|---|
| April 2009 | US$524,674.26 |
| June 2009 | US$64,448.40 |
| July 2009 | US$597,652.65 |
| **TOTAL** | **US$1,186,775.31** |

**18.**   With respect to post-award interest, the Claimants submit that Section 2.8(d) of the COSA provides that Seller Damages should bear interest at the Default Rate *until the date of payment* (emphasis added by the Claimants). Since the Parties agree that the Default Rate is 4.875%, the Claimants contend that if the tribunal were to award post-award interest, it should award it at a rate of 4.875% pursuant to the COSA, rather than the 9% proposed by the Respondents.

*Costs*

**19.**   The Claimants seek recovery for their costs in an amount of US$9,640,144, which includes arbitrators' fees and expenses, tribunal secretary's expenses and ICC administrative costs in the total amount of US$618,785, legal fees of US$8,431,669, expert fees of US$217,495 and expenses in the amount of US$372,195.

**20.**   The PDVSA Parties say the Respondents are incorrect in saying that they substantially prevailed and should be awarded recovery for their legal fees and costs. The Claimants cite Gary G. Born, *International Commercial Arbitration* for the proposition that when a party is partially successful the tribunal typically orders the parties to bear their own legal costs and share the arbitration costs.[6] Thus, the Claimants argue that the Respondents prevailed on the Call Option claim and the New Claims, but lost most of their Counterclaims. They say the tribunal rejected the first counterclaim in its

---

[6] Claimants' Reply Submissions, p. 2, citing Exhibit RL-93, Gary G. Born, *International Commercial Arbitration*, p. 3098.

entirety and the tribunal only awarded US$5,064,038 of the US$16,487,833 claimed by the Respondents for Seller Damages. On the third Counterclaim, the Demurrage Claims, the Claimants say that these claims were fully paid and that the tribunal found that it was "not satisfied that it was necessary for the Respondents to bring those claims".[7] Since the Parties were both partially successful, the Claimants submit each side should bear its own legal fees and costs and share equally the costs of the arbitration.

21.     In the event the tribunal finds that Respondents should recover their fees and costs, the Claimants say the tribunal should nevertheless not award the ConocoPhillips Parties the following fees and costs:

(a)     The fees and disbursements of King & Spalding in the amount of US$1,639,293.37 (first counterclaim);

(b)     The fees and disbursements of MacLeod Dixon/Norton Rose in the amount of US$360,770.14 and Astigarraga Davis Mullins & Grossman PA in the amount of US$12,006.55 (first counterclaim);

(c)     The fees and costs of Aegis Energy Advisors Corp. in the amount of US$ 406,269.91(added no value);

(d)     The fees and costs of Purvin & Gertz in the amount of US$484,365.29 (first counterclaim/not fees for this dispute/improper supporting materials);

(e)     The fees and costs of Baker O'Brien in the amount of US$340,838.03 (first counterclaim/duplicative);

(f)     The fees and costs of David Smith in the amount of US$135,276.76 (unreasonable);

(g)     The fees and costs of Jon Weichbrodt in the amount of US$37,362.31 (first counterclaim/unreasonable);

---

[7] Claimants' Reply Submissions, p.3, citing the Partial Award, ¶¶ 415, 432,, 439, 441, 497.

(h)    The fees and costs of the ConocoPhillips' in-house counsel in the amount of US$113,778.61 (not appropriate/improper supporting materials);

(i)    One half of the fees and costs for discovery and documents production (US$243,800.15) in the amount of US$121,900.07 (50% of the fees/costs relate to the first counterclaim);

(j)    One half of the fees and costs of FTI Consulting (US$57,330.59) in the amount of US$28,665.29 (50% of the fees/costs relate to the first counterclaim); and

(k)    One half of the fees and costs of the arbitrators and ICC administrative costs (US$615,000) in the amount of US$307,500 (50% of the fees/costs relate to the first counterclaim).

By applying these positions to the amounts claimed by the ConocoPhillips Parties for these objected to costs, the Claimants appear to be asking for a reduction in the amount of US$3,988,026.33.[8]

22.    Alternatively, the Claimants say that in the event the tribunal were to award any fees and costs to the Respondents, it should only award those costs and fees to the Respondents which were incurred in connection with the defence of the Call Option claim and the New Claims. In such event, it is said, the tribunal should also award the Claimants those fees and costs that were incurred in connection with the defence of the counterclaims. By setting off these two sets of costs, the Claimants say the net amount that should be awarded to the Respondents should be US$3,982,719, as shown in the following table:

| CATEGORY | AMOUNT |
|---|---|
| Fees and disbursements of Freshfields | US$6,090,505, plus |
| 50% Discovery and document discovery related expenses | US$121,900, plus |
| 50% of FTI Consulting's fees | US$28,665.29, plus |

---

[8] This sum is derived by the tribunal adding up the figures noted above in paragraphs 13(a) to 13(k), inclusive.

| CATEGORY | AMOUNT |
|---|---|
| Fees for translation services | US$333.92, plus |
| 50% of Arbitrators' fees and expenses and the ICC administrative costs | US$307,500, |
| **SUB-TOTAL** | **US$6,548,904** |
| **LESS** | |
| Fees and expenses of Curtis relating to first counterclaim | US$1,853,194, plus |
| Fees and expenses of Claimants' technical expert, Mr. Favela | US$217,495, plus |
| 50% of Claimants' expenses (as set forth in Section IV of Claimants' Submission on Cost and Interest) | US$186,098, plus |
| 50% of the arbitrators' fees and expenses and ICC administrative costs | US$309,398 |

| | |
|---|---|
| **TOTAL TO BE AWARDED TO RESPONDENTS** | **US$3,982,719** |

## E.    SUBMISSIONS OF THE RESPONDENTS

*Interest*

23.    The Respondents initially submitted they should be entitled to pre-award interest on Seller Damages at a rate of 4.875% for a total amount of US$1,169,850 in interest. However, in their reply submissions, the Respondents agreed with the Claimants' calculation, notably with respect to the Damages Due Date and the days in a year (360 days as defined in the Operating Agreement). The Respondents therefore seek an amount of US$1,186,775.31 for pre-award interest calculated to the date of the Partial Award.[9]

24.    With respect to post-award interest, the ConocoPhillips Parties submit they should be entitled to interest at a rate of 9%, pursuant to § 5004 New York Civil Practice Law and Rules (**CPLR**). The Respondents say 9% is the proper rate since the underlying agreements in this dispute do not specify the rate of interest that should be applied post-award and since even the Claimants have

---

[9] Respondents' Reply Submissions, p. 2.

-13-

advocated for a post-award interest rate of 9% in their pleadings in this dispute.[10]

*Costs*

25.  The Respondents submit the Claimants have no basis for recovering their costs in this arbitration since the tribunal dismissed their claims in their entirety.

26.  They further submit that the Respondents successfully defended the Claimants' claims and substantially prevailed in all the Counterclaims brought against the Claimants. With respect to the Claimants' claims, they say the tribunal found that the ConocoPhillips Parties validly exercised the Call Option, dismissed the Claimants' first New Claim regarding the Authorized Transfer to Phillips 66 and found that ConocoPhillips validly assigned the COSA and the SCOSA to Phillips 66, thereby dismissing the Second New Claim. With respect to the Respondents' Counterclaims, they submit the tribunal did not dismiss any of the Counterclaims. They say that on the first Counterclaim, the tribunal found that it had jurisdiction to determine breaches of the COSA relating to the ALAs and declared that three of the ALAs were timely requested. On the second Counterclaim, the tribunal awarded the ConocoPhillips Parties Seller Damages in the amount of US$5,064,038. With regard to the third Counterclaim, the demurrage claims, the Respondents request recovery of the costs associated with these claims, notwithstanding that the PDVSA Parties ultimately paid these claims. The Respondents submit that even though it is accepted industry practice to pay demurrage claims within four months of the claims having been brought, the Claimants failed to make timely payment of these claims and the Respondents should not have been put in the position of seeking payment of these claims through this arbitration.[11]

---

[10] Respondents' Reply Submission, p. 2 citing Statement of Claim, ¶ 127(g); Reply, ¶ 249(g) and Reply to New Claims, ¶ 143(g).

[11] Respondents' Submissions, ¶¶ 15-18.

27.    In its reply submissions on costs, the Respondents revised their requested legal fees and costs. The Respondents request an award for 100% of the legal fees and expenses incurred by the ConocoPhillips Parties related to the arbitration in the amount of US$9,891,517.77. The Respondents also request post-award interest on legal fees and costs at a rate of 9% from the date of the Final Award until when payment is made by the PDVSA Parties.

## F.    ARBITRAL TRIBUNAL DETERMINATION

*Interest*

28.    In its Partial Award dated April 24, 2014, the tribunal awarded the Respondents Seller Damages in the amount of US$5,064,038. This amount of Seller Damages includes the Seller Damages for April 2009 pursuant to a Buyer Monthly Report dated May 19, 2009 in the amount of US$2,174,245; for June 2009 pursuant to a Buyer Monthly Report dated July 20, 2009 in the amount of US$276,713; and for July 2009 pursuant to a Buyer Monthly Report dated August 20, 2009 in the amount of US$2,613,080.

29.    The Parties agree that interest can be sought and awarded under the COSA for Seller Damages. The tribunal notes that the Claimants and the Respondents agree that the rate of pre-award interest should be 4.875%, pursuant to a calculation based on: (i) Sections 2.8(d) and 4.2 of the COSA; (ii) Section 19.10 and the Default Rate definition in the Operating Agreement; and (iii) the prime interest rate published by JPMorgan Chase and the New York statutory pre-judgment rate in § 5004 CPLR.[12]

30.    The tribunal is satisfied that the Respondents are entitled to pre-award interest on Seller Damages under the COSA. Further, based on the Parties' submissions agreeing on the rate of pre-award interest at 4.875% and the applicable contractual provisions as noted in the preceding paragraphs, the tribunal accepts that the applicable rate for such interest is 4.875%. The Parties are agreed on the application of that interest rate from when the Seller

---

[12] Claimants' Costs Submissions, p. 3; Respondents' Costs Submissions, ¶ 8. The Parties originally differed, however, on the application of this interest rate. The Respondents have, in their reply submissions, agreed with the Claimants' calculations. The Claimants' calculation resulted in a higher amount of interest on Seller Damages.

Damages became due,[13] until April 14, 2004, the date of the Partial Award. Further, the Parties have calculated the interest on a simple interest basis, pursuant to Sections 2.8(d) and 4.2 of the COSA and the definition of Default Rate in the Operating Agreement. The tribunal is satisfied, based on these contractual provisions and the submissions of the Parties, that the Claimants have properly calculated the amount of interest due for that time period and will, therefore, make an award that the Respondents are entitled to pre-award interest in the amount of US$1,186,775.31 in addition to the Seller Damages awarded in the Partial Award in the amount of US$5,064,038.

31.   The Parties have disagreed on what interest rate should apply to post-award interest. The Claimants have argued for a simple rate of 4.875% pursuant to Section 2.8(d) of the COSA, while the Respondents say a simple rate of 9% should apply, pursuant to § 5004 New York CPLR. The tribunal accepts the Claimants' position that post-award interest should be based on Section 2.8(d) of the COSA, that is to say, it should be set at a rate of 4.875%. Section 2.8(d) provides in part:

> [...Seller Damages] shall bear interest at the Default Rate pursuant to Section 4.2 from such Damages Due Date until the date of payment. (emphasis added)

32.   The meaning of the phrase, "until the date of payment" is clear. It is an express provision dealing with interest on Seller Damages and acts in the same fashion as post-award interest. A rate of 9% would thus be contrary to the agreement between the Parties. Since the Parties agree that the Default Rate is 4.875%, the tribunal will award the Respondents post-award interest on unpaid Seller Damages as awarded in the Partial Award at a rate of 4.875%, pursuant to the COSA, and calculated on a simple interest basis[14], applying the same daily interest calculation used to calculate the pre-award

---

[13] The Damages Due Dates for the Seller Damages in issue are: Seller Damages for April 2009 became due on May 29, 2009, the Seller Damages for June 2009 became due on July 30, 2009 and the Seller Damages for July 2009 became due on August 30, 2009.

[14] The Parties have both cited to Section 2.8(d) and 4.2 of the COSA, which refers to the definition of Default Rate in the Operating Agreement, which provides in part: "[A] simple interest rate per annum (no compounding) equal to the lesser of..."

interest as set out in sub-paragraphs 16(a) and (b), above, until all unpaid Seller Damages and accumulated interest are paid in full.

*Costs*

33.   None of the agreements between the Parties relevant to this arbitration provide specifically for the allocation of arbitration costs between the Parties. As a result, the Parties have referred the tribunal to its authority to award costs pursuant to the ICC Rules.

34.   Under Section 6.11 of the Transfer Agreement, Section 12.2 of the COSA, Section 2.6 of the SCOSA, Section 13 of the Guarantee and by agreement of the Parties, this arbitration is governed by the ICC Rules. The determination and allocation of costs is dealt with in Article 31 of the ICC Rules, which provides:

> 1. The costs of the arbitration shall include the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitral proceedings, as well as the fees and expenses of any experts appointed by the Arbitral Tribunal and the reasonable legal and other costs incurred by the parties for the arbitration.
>
> [...]
>
> 3. The final Award shall fix the costs of the arbitration and decide which of the parties shall bear them or in what proportion they shall be borne by the parties.

35.   On a plain reading, it is apparent that the ICC Rules grant a broad discretion to the tribunal to determine which party shall bear the costs and to what extent. This is consistent with generally recognized principles for the award of costs and the opinion of commentators on the ICC Rules.

36.   In international commercial arbitration, the awarding of costs is frequently addressed, at least initially, in terms of which party has prevailed. In that respect, the Parties have relied on the relative success each of them claims to have realized in this arbitration as a factor for determining the proper allocation of costs. The tribunal appreciates that the cases presented have been complex, with many challenging questions of both fact and law.  In these circumstances, the tribunal considers it is appropriate not only to look at how it

decided the principal claims and counterclaims in the Partial Award, but also to consider the manner in which these proceedings were brought.

37.   The first Request for Arbitration was issued by PDV Sweeny and PDV Texas on February 25, 2010.  On August 16, 2010, one of the Respondents, COP, issued a further Request for Arbitration.  On October 29, 2010, the Claimants brought a Request for Consolidation. After hearing the Parties, the tribunal granted the Claimants' application, in the form of an Order dated December 15, 2010. In the tribunal's view, that consolidation considerably reduced costs for both sets of parties and the Claimants should be credited for that initiative. Even though the consolidated arbitration continued as a single case, it is important   to  recall,  when  considering  the  success  of  each  party,  that, originally, these arbitrations were separately brought, with stand-alone claims.

38.   Article 31(3) of the ICC Rules expressly authorizes the tribunal, when exercising its discretion on costs, to decide "which of the parties shall bear them or in what proportion they shall be by the parties".  In this case, the tribunal is persuaded that there are circumstances which justify the apportionment of the costs between the Parties as a result of the various outcomes achieved on the different claims and counterclaims.

39.   The Claimants' principal claim challenged the validity of the Respondents' exercise of the Call Option.  The tribunal dismissed this claim in its entirety. The Claimants also sought an award declaring the PDVSA Parties' Joint Venture interest had remained the property of the Claimants, as well as injunctive and compensatory relief. The Claimants estimated the monetary value of their claim to be US $750,000,000. The tribunal found that the Call Option was not an unenforceable penalty, the Respondents had not breached their fiduciary duty,   by a majority, that the Respondents had also not breached their duty of good faith and fair dealing, and there was no Event of Force Majeure. Accordingly, the tribunal did not award any of the relief requested by the PDVSA Parties.

40.   Following a corporate reorganization of COP resulting in the transfer of COP's refining assets and Joint Venture interests to Phillips 66 in 2012, the

Claimants submitted two additional claims on the basis that the transfer to Phillips 66 was executed in breach of certain of the agreements between the Parties. The first New Claim was dismissed as it was contingent on a finding that the Call Option was invalid and the second New Claim was dismissed on the basis that the evidence favoured the Respondents' interpretation that a "Phillips Authorized Transfer" was included in the definition of "Authorized Transfer" found in Exhibit A to the Transfer Agreement.

41.   With respect to the counterclaims brought by the ConocoPhillips Parties, success in relation to these claims was divided. The Respondents advanced three Counterclaims: (a) Aggregate Lookback Adjustment claims for the months in 2008 and 2009 where Merey Crude was allegedly not the most economical crude oil to refine at the Sweeny Refinery; (b) Seller Damages; and (c) certain demurrage claims. Finally, the Respondents asserted a contingent claim in which they sought damages for the so-called Negative Margin Adjustment issue.

42.   In terms of the relief sought, the Respondents requested Aggregate Lookback Adjustment damages in the amount of US$253.6 million, Seller Damages in the amount of US$16,487,833, and cumulative Negative Margin Adjustment in the amount of US$602,852,737, as well as applicable interest.

43.   On the ALA claims, the tribunal agreed with the Respondents that the tribunal had jurisdiction to determine breaches of the COSA but dismissed the Respondents' argument that the PDVSA Parties in fact breached the COSA. Still, the tribunal, with the Parties' agreement that it had jurisdiction to do so, made findings regarding whether some of the ALAs were validly claimed. The tribunal declared that the ALAs for the second semester of 2008 and the first and second semesters of 2009 were timely requested and the duty for the Parties to jointly calculate the ALAs for those periods remained outstanding. The tribunal did not, however, make any finding on the specific amounts requested for these ALAs. Plainly, the Respondents were not successful in getting an award for damages of US$253.6 million for their ALA claims.

44.    With respect to the second Counterclaim concerning Seller Damages, the Respondents were only partially successful. The tribunal agreed with the Respondents' arguments on the merits of the Seller Damages claims, but did not accept the full quantum of damages requested by the ConocoPhillips Parties. The tribunal awarded only US$5,064,038 of the US$16,487,833 claimed by the Respondents for Seller Damages.

45.    The third Counterclaim, based on the demurrage claims, was not a live issue by the time the tribunal ruled on the claim since the Claimants had, by then, fully paid these demurrage claims. As noted by the Claimants, the tribunal indicated in its reasons that it was not satisfied that it was necessary for the Respondents to bring those claims.

46.    Finally, the Respondents' Negative Margin Adjustment Claim was summarily dismissed by the tribunal as that claim was contingent on a finding that the Call Option was not validly exercised, which the tribunal rejected.

47.    When these arbitration proceedings are considered as a whole, it is reasonable to conclude that the Respondents have prevailed in their defense of the exercise of the Call Option and they have defeated the New Claims. But, success in relation to the counterclaims has been divided.

48.    Mention should be made of the Parties' conduct in this arbitration. The tribunal wishes to convey its appreciation of the Parties' efficient and professional approach throughout these arbitration proceedings. The tribunal considers that all Parties conducted this arbitration in a cost-effective manner. The Parties were represented by very able counsel who presented the arguments, both orally and in writing, in a concise and comprehensive manner. There were no vexatious claims in this arbitration or unnecessary applications. Overall, this arbitration concerned real and challenging issues, with major consequences to each party.

49.    In light of these considerations, the tribunal finds that costs should be awarded to the Respondents, but that the amount of such costs should take into account the relative success of the Parties on their claims and counterclaims, the conduct of the Parties and the nature of the issues in this

arbitration. The tribunal concludes it should exercise its discretion under Article 31 of the ICC Rules to reflect these factors and therefore apportions the costs to be awarded to the Respondents so that the Claimants shall pay 40% of the Respondents' claimed legal costs and expenses. The ConocoPhillips Parties have requested costs in the total amount of US$9,272,674.50[15] and, therefore, the tribunal will order the Claimants to pay 40% of that amount, namely US$3,709,069.80.

50. The Claimants and the Respondents have each paid the amount of US$615,000 towards the costs of the arbitration, as fixed by the ICC Court. The tribunal notes that pursuant to Article 31 of the Rules, the ICC Court, at its session of July 24, 2014, has fixed the costs of arbitration for the Arbitrators' fees and expenses and administrative expenses of the ICC Court, in the amount of US$1,230,000, which is covered by the payments made by the Parties (i.e. the Claimants and the Respondents) in equal shares. The Parties have also each paid the amount of US$3,843.27 for the expenses of the Tribunal Secretary.

51. The tribunal concludes it should also exercise its discretion under Article 31 of the ICC Rules with respect to Arbitrators' fees and expenses, Tribunal Secretary expenses and administrative expenses of the ICC Court. The tribunal finds some guidance in *The Secretariat's Guide to ICC Arbitration*, in the section dealing with the Arbitrators' decision on costs, which states in part:

> Parties, arbitrators and state courts generally accept that the approach to costs adopted in ICC arbitrations is unique and not influenced by rules on costs in court proceedings: all costs incurred in relation to arbitral proceedings are in principle regarded as recoverable, provided they are reasonable.
>
> [...]
>
> Even where an arbitral tribunal decides the case fully in favour of one party, it may determine that the losing party nonetheless was justified in making its claims or defending itself against certain claims. In that

---

[15] This amount is the result of the revised total costs claimed by the Respondents of US$9,891,517.77 minus the amount the Respondents paid towards the advance on costs and the expenses of the Tribunal Secretary in the amount of US$618,843.27.

respect, the proceedings provide some benefit to both sides by resolving a genuine disagreement on an aspect of their relationship.[16]

52. As these consolidated proceedings stem from two, originally separate, proceedings, the tribunal considers it appropriate for the Parties to each bear one half of the total amount of these fees and expenses. Both parties can be said to have had justified reasons for pressing strong yet partly unsuccessful claims, and the tribunal considers this best reflected in a decision leaving both sets of parties to bear the arbitration costs of these proceedings in equal shares. Therefore, the tribunal directs that the Arbitrators' fees and expenses, the Tribunal Secretary's expenses and the administrative expenses of the ICC Court shall be borne equally by the Claimants and the Respondents.

53. The Respondents also requested post-award interest at a rate of 9% simple interest per annum on any amount of costs awarded in this Final Award. The Respondents have argued in favor of the application of the New York statutory rate, which deals with post-award interest from the period of the Final Award until receipt of payment by the ConocoPhillips Parties.[17] Although the Claimants were silent in response to this submission, the tribunal notes that the Claimants have consistently advocated in their pleadings for the application of the New York statutory rate of 9% to both pre and post-award interest.[18] Given the underlying purpose of interest, which is that payment should be made in a timely manner, the tribunal finds interest on outstanding costs for legal fees should be awarded to the Respondents, at a rate of 9% simple interest per annum. However, in the exercise of its broad discretion in the awarding of costs, the tribunal will allow a 30 day grace period following the date of the notification of this Final Award to the Parties, within which the Claimants shall pay the awarded costs of US$3,709,069.80 before interest at the rate of 9% simple interest per annum will start running with respect to any unpaid amounts of costs awarded.

---

[16] *The Secretariat's Guide to ICC Arbitration*: A Practical Commentary on the 2012 ICC Rules of Arbitration from the Secretariat of the ICC International Court of Arbitration, 2012, p.407. The section quoted relates to Article 37(4) (which is the new rule for Article 31(3)) of the 2012 Rules, however, at p. 405 that there are no modification from 31(3) to 37(4), therefore the comments at p. 407 apply, as guidance, to the tribunal's reasons.

[17] §5004 New York CPLR.

[18] Statement of Claim, ¶ 127(g); Reply, ¶ 249(g); Reply to New Claims, ¶ 143(g).

## G.    FINAL AWARD

54.    The tribunal accordingly AWARDS AND DECLARES as follows:

(a)    The Claimants shall pay pre-award interest on Seller Damages at the rate of 4.875%, calculated pursuant to Section 2.8(d) of the COSA from the date the Seller Damages became due (Seller Damages for April 2009 in the amount of US$2,174,245 became due on May 29, 2009, the Seller Damages for June 2009 in the amount of US$276,713 became due on July 30, 2009 and the Seller Damages for July 2009 in the amount of US$2,613,080 became due on August 30, 2009) until April 14, 2014, the date of the Partial Award, in an amount of US$1,186,775.31;

(b)    The Claimants shall pay post-award interest on Seller Damages at the rate of, of 4.875%, calculated pursuant to Section 2.8(d) of the COSA from April 14, 2014, until all Seller Damages and accumulated interest are paid in full;

(c)    The Claimants shall reimburse the Respondents for their legal costs in the amount of US$3,709,069.80;

(d)    The Claimants and the Respondents shall bear equally the costs of the arbitration, which are the fees and expenses of the Arbitrators, the fees and expenses of the Tribunal Secretary and the fees and expenses of the ICC Court, in the total amount of US$1,230,000; and

(e)    The Claimants shall pay post-award interest at the rate of 9% simple interest per annum on the legal costs awarded in paragraph 54(c) in the amount of US$3,709,069.80 starting 30 days after the notification of this Final Award to the Parties until the costs and interest are paid in full.

**Place of arbitration:**        New York City, New York, U.S.A.

**Date:**                        *18th August*, 2014.

BRUNO W. BOESCH, ESQ.
Co-Arbitrator

ABRAHAM D. SOFAER, ESQ.
Co-Arbitrator

DAVID. R. HAIGH, Q.C.
Chairman