USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 21 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PDV Sweeny, Inc., et al.,

                Petitioners,

–v–

ConocoPhillips Co., et al.,

                Respondents.

14-cv-5183 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

    This case concerns two arbitration awards—the "Partial Award" and the "Final Award"—that were issued in the wake of a commercial dispute between former joint partners in an oil refining operation. The Petitioners, PDV Sweeny, Inc. ("PDV Sweeny") and PDV Texas, Inc. ("PDV Texas"), served as suppliers of Venezuelan crude oil. The Respondents, ConocoPhillips Company ("ConocoPhillips") and Sweeny Coker Investor Sub, LLC ("Sweeny Sub"), managed the facility that processed the crude oil into saleable products. On September 1, 2015, this Court issued a Memorandum and Order denying Petitioners' request to vacate a portion of the Partial Award and granting Respondents' cross-petition to confirm, recognize, and enforce both the Partial Award and the Final Award. Dkt. No. 31 ("Order"). The Clerk of Court issued a judgment in favor of Respondents on the same day. Dkt. No. 32 ("Judgment").

    Three weeks after the Judgment was issued, Respondents filed a motion pursuant to Federal Rule of Civil Procedure 60(a) to correct the Judgment. Respondents seek two changes: first, they ask the Court to correct the Judgment to reflect confirmation of both the Partial and Final Awards; second, they ask the Court to correct the Judgment to make explicit the monetary

sums awarded to Respondents by the Awards. For the reasons that follow, Respondents' motion is GRANTED.

## I. BACKGROUND

The Court assumes the parties' familiarity with the facts as recounted in its September 1 order. *See* Order at 2-6. That order outlines the complex web of relationships and agreements governing the supply and management of an oil refining operation (the "Joint Venture") that became the subject of arbitration. The four parties before the Court in this action are the four parties that had an ownership interest in the Joint Venture. *See* Pizzurro Decl., Dkt. No. 28, Ex. 1 ("Partial Award") ¶ 16. Petitioners, PDV Sweeny and PDV Texas, owned half of the Joint Venture, and Respondents, ConocoPhillips and Sweeny Sub, owned the other half. *See id.*

In addition to the four parties to *this* action, there are two entities associated with Petitioners that were involved in the arbitration: Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela, and PDVSA Petróleo, S.A. ("PPSA"), a wholly owned subsidiary of PDVSA. Partial Award ¶¶ 10-11. PDV Sweeney and PDV Texas are indirect wholly-owned subsidiaries of PDVSA. *Id.* ¶¶ 8-9. Collectively, these four entities are referred to in the two arbitration awards as the "Claimants" or the "PDSVA Parties." *See, e.g., id.* ¶ 12. Thus, there were a total of six parties before the three-member arbitration panel—the four PDVSA Parties and the two Respondents. *See id.* ¶¶ 8-16.

The first award the arbitration panel issued—the Partial Award—resolved the substantive disputes between the PDVSA Parties and Respondents. Specifically, the Partial Award upheld a key provision of the agreement that governed the manner in which the parties could transfer their interests in the Joint Venture. *See* Partial Award ¶¶ 201-11. That provision, known as the "Call

2

Option," permitted Respondents to acquire Petitioners' interests in the Joint Venture if certain "call events" occurred. *Id.* ¶ 162. One such event was a failure to pay "Seller Damages" that remained uncured for 90 days. *Id.* ¶ 197. In August of 2009, Respondents exercised the Call Option on the grounds that the PDVSA Parties had failed to pay Seller Damages from January and March of 2009. *Id.* ¶¶ 163-65. The arbitration panel determined that "Respondents properly exercised the Call Option," thereby legitimizing Respondents' acquisition of 100% of the ownership interest in the Joint Venture. *Id.* ¶ 497(a)(ii). Finally, the Partial Award determined that Respondents were owed $5,064,038 on the basis of three additional months of unpaid Seller Damages. *Id.* ¶¶ 430-32; *see also id.* ¶ 497(b)(vi).

The second arbitration award—the Final Award—dealt only with issues of costs, expenses, and interest. The Final Award provided that Respondents were entitled to a) pre-award interest on the Seller Damages at a rate of 4.875 percent, for a total of $1,186,775.31; b) post-award interest on the Seller Damages at a rate of 4.875 percent; c) costs and expenses of $3,709,069.80; and d) post-award interest on those costs and expenses at the New York statutory rate of nine percent per annum, following a 30-day grace period. Prevatt Decl., Dkt. No. 26, Ex. G ("Final Award") ¶ 54.

Litigation before this Court began before the Final Award was issued, when Petitioners moved to vacate a portion of the Partial Award. *See* Pet. to Vacate Arbitration Award, Dkt. No. 2. PDVSA and PPSA did not join in as parties to the petition, which challenged only the arbitration panel's ruling that Respondents' exercise of the Call Option was valid. *See id.* at 2, 15. After the Final Award was issued, Respondents cross-petitioned for confirmation, recognition, and enforcement of both the Partial and Final Awards. *See* Mot. to Confirm Arbitration, Dkt. No. 23. Respondents did not seek to join PDVSA and PPSA as parties in their cross-petition. *See* Mem. of Law in Supp. of Mot. to Confirm Arbitration, Dkt. No. 24, at 1

3

(distinguishing between "Petitioners here" and "fellow arbitration claimants . . . PDSVA . . . and PDVSA Petróleo [PPSA]").

In its Order, the Court granted Respondents' cross-petition and held that "the Panel's Partial Award and Final Award are both confirmed." Order at 23. The Judgment, however, made no mention of the Final Award. Moreover, neither the Order nor the Judgment specified the amount of damages, costs, or interest to which Respondents were entitled.

## II.  LEGAL STANDARD

Under Rule 60(a), a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). As the Second Circuit has explained, the Rule permits the correction of such errors—both clerical and inadvertent—"when correction is necessary 'not to reflect a new and subsequent intent of the court, but to conform the order to the contemporaneous intent of the court.'" *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 505 n.11 (2d Cir. 2007) (quoting *Marc Rich & Co. A.G. v. United States*, 739 F.2d 834, 836–37 (2d Cir. 1984)). Accordingly, Rule 60(a) "is not meant to provide a way for parties to . . . charge errors in what a court has deliberately done." *Emp'rs Mut. Cas. Co. v. Key Pharm., Inc.*, 886 F. Supp. 360, 363 (S.D.N.Y. 1995); *see also* 11 Charles Alan Wright et al., Federal Practice and Procedure § 2854 (3d ed. 2012) ("Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b)."). "In short, 'a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.'" *Emp'rs Mut.*, 886 F. Supp. at 363-64 (quoting Wright et al., Federal Practice and Procedure § 2854).

A court may correct a judgment pursuant to Rule 60(a) on motion of one of the parties "or on its own, with or without notice." Fed. R. Civ. P. 60(a).

### III. DISCUSSION

Respondents request that the Court make two corrections to the Judgment. First, they ask the Court to add confirmation of the Final Award to the Judgment. Second, they ask the Court to specify the monetary sums awarded by the arbitration panel in the Judgment. The Court agrees that both corrections are warranted. Additionally, the Court determines that the federal statutory post-judgment interest rate should apply to the amounts specified in the Awards from the date of the Court's initial Order and Judgment.

#### A. Omission of the Final Award

The omission of the Final Award from the Judgment is precisely the kind of "clerical mistake" that is subject to correction under Rule 60(a). The Court's Order was clear that it granted Respondents' cross-petition to confirm *both* the Partial Award and the Final Award. *See* Order at 23 ("Respondent's Cross-Petition is GRANTED and the Panel's Partial Award and Final Award are both confirmed."). That the Judgment refers only to the Partial Award appears to be an oversight. Petitioners do not disagree. *See* Pet'rs Br. 6 ("Petitioners do not oppose Respondents' motion to correct the judgment to the extent that it seeks to clarify that the Court granted Respondents' cross-petition to confirm, recognize and enforce both the Partial Award and the Final Award."). Accordingly, the Court grants Respondents' request to correct the Judgment to reflect confirmation, recognition, and enforcement of both the Partial and Final Awards.

#### B. Omission of Monetary Sums

5

Respondents also seek to correct the Judgment to reflect the monetary sums the arbitration panel awarded to Respondents pursuant to the two Awards. Specifically, Respondents claim that a corrected judgment should indicate that they are entitled to: a) Seller Damages of $5,064,038; b) pre-award interest on the Seller Damages at a rate of 4.875 percent; c) post-award interest on the Seller Damages at the rate of 4.875 percent; d) legal costs of $3,709,069.80; and e) post-award interest on the legal costs at a rate of nine percent.

Under Rule 60(a), a court may correct a "failure to include [a] monetary award" so long as the amended judgment does not "affect substantive rights." *Dudley ex rel. Estate of Patton v. Penn-Am. Ins. Co.*, 313 F.3d 662, 665 (2d Cir. 2002); *see also Capital Constr. Corp. of N.Y. v. Zaga*, No. 11-CV-8112 (PKC), 2014 WL 2915882, at *1 (S.D.N.Y. June 26, 2014) ("Correction of judgment is appropriate when the existing judgment fails to include a monetary award."). Specifying a monetary award is appropriate when an undisputed sum is "contemplated by the arbitral award, and the district court previously confirmed the arbitral award in full but omitted mention of that sum in its confirmatory order." *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 499-500 (2d Cir. 2007). That is precisely what happened here. Both the Partial and Final Awards included monetary sums, and the Court confirmed them in full—holding that "the Panel's Partial Award and Final Award are both confirmed." Order at 23. No party has suggested that the Court's Order confirmed the Awards only in part or modified either of the Awards in any way. *See Robert Lewis*, 473 F.3d at 504 (concluding that a district court "confirmed the arbitrator's award in full" because the court "made no statement that [it] was only partly confirming the arbitration award"); *see also* 9 U.S.C. § 9 (requiring a federal district court to confirm an arbitration award "unless the award is vacated, modified, or corrected"). It is

6

therefore appropriate to add the monetary sums from both the Partial and Final Awards to a corrected Judgment.

Petitioners disagree with this conclusion, but only to an extent. They do not oppose correcting the Judgment to include the monetary sums specified in the Final Award for legal costs and interest on those costs. *See* Pet'rs Br. 8. Petitioners do oppose, however, adding the Seller Damages from the Partial Award and the interest on those damages from the Final Award. *See id.* at 7. That is because, Petitioners argue, the "Seller Damages, together with the pre- and post-award interest on those damages," were "not awarded against the Petitioners." *Id.* Rather, Petitioners contend, those amounts were awarded against PDVSA and PPSA—the two other Claimants who were before the arbitration panel but are not now before this Court. In support of this position, Petitioners note that the Partial Award declared that "the Respondents are entitled to payment *by PPSA* (under the COSA) and *by PDVSA* (under the SCOSA and the COSA Guarantee) of Seller Damages" and awarded "Seller Damages to the Respondents in the amount of US $5,064,038."[1] Partial Award ¶ 497(b)(vi) (emphasis added). Respondents, by contrast, argue that Petitioners should be liable for all of the sums awarded by the arbitration panel because Petitioners, PDVSA, and PPSA "are affiliated companies," are "represented by the same counsel," and were "on notice that Respondents had moved for confirmation of the Awards *in their entirety.*" Reply Br. 2-3 (emphasis in original).

As an initial matter, the parties' dispute on this point is not really about adding the *amounts* from the Awards to a corrected Judgment. Rather, Petitioners oppose the suggestion that they are responsible for a specific subset of those amounts—namely, the Seller Damages and the interest on those damages—and Respondents argue that Petitioners should be liable for all of

---

[1] The COSA, SCOSA, and COSA Guarantee are some of the agreements that governed the rights and obligations of the parties involved in the Joint Venture. *See* Partial Award ¶ 116-17.

7

the amounts listed in the Awards. In other words, the parties do not disagree over *what* Respondents are owed, they contest *who* owes it. Or stated another way, they dispute what amount of the Awards *these Petitioners* owe.

But the question of which of the four PDVSA Parties are responsible for which of the sums that were awarded to Respondents is not one this Court can resolve on a Rule 60(a) motion to correct the judgment. A Rule 60(a) motion "only can be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." Wright et al., Federal Practice and Procedure § 2854. Before Respondents filed their Rule 60(a) motion, neither party had raised, much less briefed, the issue of whether Petitioners could be held liable for all of the sums in the two Awards. Accordingly, the Court never had occasion to address this issue in its initial Order. It would exceed the scope of what "originally was pronounced" for the Court to weigh in now.

To be sure, the Partial and Final Awards each contain language that appears to assign responsibility for specific payments to different parties. *See, e.g.*, Partial Award ¶ 497(b)(vi) ("Respondents are entitled to payment by PPPSA . . . and by PDVSA . . . of Seller Damages."); Final Award ¶ 54(c) ("The Claimants shall reimburse the Respondents for their legal costs."). When this Court confirmed those Awards, it converted them into a judgment. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)) ("Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"). A judgment confirming an arbitration award has "the same force and effect, in all respects, as . . . a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Accordingly, if the parties disagree

over the meaning of the language in the Arbitration Awards, or over which parties may be held liable on a judgment enforcing the Awards, they are free to litigate that disagreement as they would any dispute over a judgment. But having failed to raise these issues before, the parties cannot use a Rule 60(a) motion to ask the Court to clear up whatever ambiguities they now see in the Awards.

In sum, because the Court confirmed the Partial and Final Awards in their entirety, the Judgment should reflect the amounts specified in those Awards. But making that change to the Judgment does not alter whatever liability the Awards assigned to Petitioners. Rather, as with any judgment confirming an arbitration award in its entirety, the Awards should be enforced according to their terms.

### C.     Post-Judgment Interest Rate

The last remaining issue raised in the parties' briefs relates to the post-judgment interest rate on the damages in the two Awards and when that rate should apply. The Final Award set a post-*award* interest rate for each category of damages, but not a post-*judgment* interest rate.[2] Federal law provides a standard formula for calculating interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. And when an arbitration award is enforced through a judgment, the "debt created by [the award] merges with a judgment entered on that [award], so that the [award] debt is extinguished and only the judgment debt survives." *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004); *see also Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) ("[O]nce an arbitration award is

---

[2] Specifically, the Final Award instructs "the Claimants" to pay "post-award interest on Seller Damages at the rate . . . of 4.875%," as calculated under one of the agreements between the PDVSA parties and Respondents, "from April 14, 2014, until all Seller Damages and accumulated interest are paid in full." Final Award ¶ 54(b). And it further instructs the Claimants to pay "post-award interest at the rate of 9% simple interest per annum on the legal costs . . . starting 30 days after the notification of this Final Award to the Parties until the costs and interest are paid in full." *Id.* ¶ 54(e).

confirmed in federal court, the rate specified in § 1961 applies . . . even if the arbitration award purported to grant post-judgment interest.").

In their opening brief, Respondents argued that the corrected Judgment should reflect the interest rates for Seller Damages and legal costs that were specified in the Final Award, but were silent as to any distinction between post-*award* interest and post-*judgment* interest. *See* Resp'ts Br. 6. In their Reply Brief, however, Respondents acknowledge that "the mandatory post-judgment interest rate under 28 U.S.C. § 1961" should supplant the interest rates specified in the Final Award at some point. Reply Br. 5. Accordingly, the corrected Judgment should reflect that Respondents are entitled to post-judgment interest, at the federal statutory rate, for all sums specified in the Awards. *See Cappiello v. ICD Publications*, 868 F. Supp. 2d 55, 59 (E.D.N.Y. 2012), *aff'd sub nom. Cappiello v. ICD Publications, Inc.*, 720 F.3d 109 (2d Cir. 2013) (holding that a court may clarify the post-judgment interest rate under Rule 60(a) when, although the rate was "not explicitly stated in the judgment, neither party disputes that the [prevailing party] was statutorily entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961").

The only remaining question is from what date the federal statutory rate applies, in place of the two post-award interest rates specified in the Final Award. Respondents contend that the rate from "§ 1961 will apply only as of the date of [a] *corrected* judgment," rather than the date of the Court's initial Order and Judgment. Reply Br. at 5 (emphasis in original). Respondents are mistaken. As the Second Circuit has explained, "post-judgment interest should be calculated from whenever judgment was first ascertained in a meaningful way." *Westinghouse*, 371 F.3d at 104. Here, that is the date of the Court's original Order and Judgment—September 1, 2015. Respondents attempt to rely on *Westinghouse* in arguing for a different result. They note that, in *Westinghouse*, the court determined that post-judgment interest should accrue from the later of

two judgments because the earlier judgment had been vacated. *See id.* But the facts of *Westinghouse* are instructive. There, the district court had confirmed an arbitration award but had also offset the damages from that award with damages from two other judgments involving the parties. *Id.* at 99. When the case first came to the Second Circuit, it rejected the district court's holding on the issue of setoff, vacated the district court's judgment, and remanded the case. *Id.* at 99-100. On remand, the district court held that post-judgment interest—rather than the higher rate of post-award interest specified in the purchase agreement between the parties— should be calculated from the date of the earlier, vacated judgment. *Id.* at 100. When that issue came before the Second Circuit, the court again rejected the district court's approach. In describing the district court's first (vacated) judgment, the Second Circuit explained that "[w]hat the district court did is analogous to a judgment that correctly determines liability, but errs in applying the appropriate method to calculate damages." *Id.* at 104. The court therefore concluded that "such a judgment was not ascertained in a meaningful way for the purposes of post-judgment interest." *Id.*

Here, by contrast, nothing in Respondents' motion to correct the Judgment asks the Court to alter its prior holding that the Partial and Final Awards are confirmed in full. Unlike in *Westinghouse*, the Court's initial Order did nothing comparable to "err[ing] in applying the appropriate method to calculate damages." *Id.* Instead, the Order confirmed the damages specified in the two Awards, and the Judgment simply failed to recite those amounts. Judgment was therefore "ascertained in a meaningful way" on September 1, 2015, and the Court will correct the Judgment to reflect post-judgment interest, at the federal statutory rate, from that date.

11

## IV.    CONCLUSION

In conclusion, Respondents' motion to correct the Judgment is GRANTED. The corrected Judgment will reflect that the Court confirmed both the Partial and Final Awards. The corrected Judgment will also reflect that, subject to the conditions specified in the Awards, Respondents are entitled to:

1. Seller Damages of $5,064,038;

2. Pre-award interest on the Seller Damages at a rate of 4.875 percent, as calculated under Section 2.8(d) of the COSA, from the date the Seller Damages became due until the date of the Partial Award (April 14, 2014), for a total of $1,186,775.31.

3. Post-award interest on the Seller Damages at the rate of 4.875 percent, as calculated under Section 2.8(d) of the COSA, from April 14, 2014, until September 1, 2015.

4. Legal costs of $3,709,069.80;

5. Post-award interest on the legal costs at a rate of nine percent, starting 30 days after notification of the Final Award until September 1, 2015, for a total of $312,781.28; and

6. Post-judgment interest on the Seller Damages and legal costs at the federal statutory rate specified in 28 U.S.C. § 1961, beginning September 1, 2015.

This resolves Docket No. 33.

SO ORDERED.

Dated: Dec 21, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge